1

2                       UNITED STATES DISTRICT COURT

3            FOR THE EASTERN DISTRICT OF CALIFORNIA

4                                    )
    DANNY SAUL ROSALES,              )   NO.  2:07-CV-168-RHW-JPH
5                                    )
                                     )
6              Petitioner,           )
                                     )   REPORT AND RECOMMENDATION RE:
7        v.                          )   PETITION FOR WRIT OF HABEAS
                                     )   CORPUS
8   CALIFORNIA BOARD OF PAROLE       )
    HEARINGS, et al,                 )
9                                    )
                                     )
10                                   )
               Respondant.           )
11                                   )
                                     )
12                                   )
                                     )

13  **I.   Factual History**

14       On January 14, 1979, Barbara Romero, Lilia Vasquez, Olivia de

15  la Rosa and Alice de la Rosa were with five other women at

16  Vasquez's home.  Pet. Ex. 4 14:8-13.  The group heard dogs barking

17  at about 10:00 p.m., and exited the house to find Petitioner

18  standing near Vasquez's van, with the driver's door ajar.  Pet.

19  Ex. 4 14:14-22.  Vasquez looked in the vehicle to see if anything

20  was missing and asked Petitioner what he was doing.  Pet. Ex. 4

21  14:24-26.  She then shut the vehicle's door and returned inside

22  the house.  Pet. Ex. 4 14:27-15:2.

23       Alice de la Rosa arrived at the home several minutes later,

24  and saw Petitioner loitering in the area.  Pet. Ex. 4 15:2-5.  The

25  four women went outside to confront Petitioner; two held his

26  shoulders while a third checked his pockets, and found an item

27  they believed to be from Romero's vehicle.  Pet. Ex. 4 15:6-13.

28  At this time, the women lifted Petitioner's shirt, and discovered

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 1

1  a knife in the waistband of his pants.  Pet. Ex. 4 15:14-17.  One

2  of the women yelled for someone to call the police.  Pet. Ex. 4

3  15:20-21.  Petitioner then used the knife to stab all four women,

4  in the chest, abdomen, and arms, killing Romero and injuring the

5  other three.  Pet. Ex. 4 15:26-16:18.  When police located

6  Petitioner that evening at around 11:30, they recovered a 13-inch

7  buck knife, as well as blood-stained clothing previously reported

8  as being worn by Petitioner.  Pet. Ex. 4 16:24-17:16.

9  Petitioner pled guilty on October 15, 1980 to second degree murder

10  and three counts of assault with intent to commit murder.  Pet.

11  1:22-23.  He was sentenced to 15-years-to-life in prison for the

12  murder count, with concurrent determinate sentences of seven years

13  to run for each of the assault counts.  Pet. 1:24-25.  An

14  additional one-year sentence was imposed but stayed, pursuant to

15  California Penal Code Section 12022(b), because Petitioner used "a

16  deadly or dangerous weapon in the commission of a felony."  Pet.

17  1:25-2:1.

18  **II.  Procedural History**

19      Petitioner was eligible for parole after serving ten years of

20  his sentence.  Pet. 2:7-8.  His first parole suitability hearing

21  took place in May 1989, and parole was denied.  Pet. 2:8-10.  The

22  California Board of Prison Terms ("the Board") continued to deny

23  Petitioner parole at every subsequent hearing, the last of which

24  took place on February 17, 2005, and denied parole for three

25  years.  Pet. 2:10-2:11; Pet. Ex. 4 79:8-9.  The Board concluded in

26  its 2005 decision that Petitioner was unsuitable for parole

27  because he "would pose an unreasonable risk of danger to society

28  or a threat to public safety if released from prison."  Pet. Ex. 4

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 2

1   76:8-11.   The Board announced its decision was based on the

2   "especially cruel and callous manner" in which the crimes were

3   committed, the "inexplicable" motive for the crimes and their

4   "very trivial" relationship to the offense, the lack of any

5   "major" criminal history for Petitioner, and his "unstable social

6   history" of using drugs and alcohol.   Pet. Ex. 4 76:11-12, 76:18-

7   20, 77:7-8, 77:9-11.

8        Petitioner filed a habeas petition with the California

9   Supreme Court on June 14, 2006, which was summarily denied on

10  January 24, 2007.   Pet. 2:12-13; Pet. 2:15-16.   Both sides admit

11  Petitioner has exhausted his available state court remedies, and

12  that this petition was timely filed.   Pet. 2:12-13; Ans. 4:20-21;

13  Ans. 4:24.   As of the filing to this court, Petitioner was in

14  custody at California State Prison, Solano, in Vacaville,

15  California.   Pet. 1:20-21.

16       Petitioner claims he is being held unlawfully on the

17  following grounds:

18           1.   Petitioner's rights to due process of law under
                  the Fifth and Fourteenth Amendments to the United
19                States Constitution were violated when the Board
                  determined that he was unsuitable for parole in
20                the absence of evidentiary support in the record
                  and a rational connection between its findings and
21                conclusions;

22           2.   Petitioner's rights to due process of law under
                  the Fifth and Fourteenth Amendments to the United
23                States Constitution were violated when the Board
                  determined that he was unsuitable for parole based
24                on his failure to meet conditions which the
                  evidence before the Board demonstrated have
25                already been met;

26           3.   Petitioner's rights to due process of law under
                  the Fifth and Fourteenth Amendments to the United
27                States Constitution were also violated when the
                  Board, in finding petitioner unsuitable for
28                parole, did not engage in individualized decision

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 3

1  making, but merely implemented an unwritten policy
2  of blanket denial of parole for virtually every
   prisoner who had been given an indeterminate life
3  sentence for murder;

4.  Petitioner's right to be free from cruel and
4   unusual punishment under the Eighth and Fourteenth
    Amendments to the United States Constitution was
5   violated when the Board subjected him to a pro
    forma parole hearing in which he could not
6   demonstrate his suitability for parole; and

7  5.  Petitioner's right to be free from cruel and
    unusual punishment under the Eighth and Fourteenth
8   Amendments to the United States Constitution and
    his rights to due process of law under the Fifth
9   and Fourteenth Amendments to the United States
    Constitution were violated when the Board, in
10  imposing an effective life sentence without parole
    upon Petitioner, took from him the benefit for
11  which he had bargained when he entered his guilty
    plea, although the state maintained this benefit
12  for which it had bargained.

13  Pet. 3:1-4, 9:12-15, 12:17-21, 14:16-18, 15:11-16.

14  **III. Discussion**

15      Petitioner's claims fall into two categories:  first, that

16  the Board violated his right to due process when it found him

17  unsuitable for parole; and second, that his continued imprisonment

18  as a result of the denial constituted cruel and unusual

19  punishment.  Because Petitioner was afforded "constitutionally

20  sufficient" procedures in his parole hearing and there is no right

21  to a premature release date for life-maximum prisoners in the

22  State of California, it is recommended that the petition be

23  denied.

24      A.   Due Process

25      Petitioner claims his due process rights were violated when

26  the Board denied him parole, thereby entitling him to a writ of

27  habeas corpus.  A prisoner in custody as a result of a state court

28  judgment may apply to a district court for a writ of habeas corpus

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 4

1   only on the grounds that his custody violates the Constitution or

2   the laws or treaties of the United States.  28 U.S.C. § 2254(a).

3   When a prisoner's confinement is not violative of federal law,

4   however, a federal court is not at liberty to issue such a writ.

5   *Wilson v. Corcoran*, 131 S. Ct. 13, 14 (2010).  "It is not the

6   province of a federal habeas court to reexamine state-court

7   determinations on state-law questions."  *Estelle v. McGuire*, 502

8   U.S. 62, 67-68 (1991).  Federal courts are therefore unable to

9   grant habeas relief on the basis of errors of state law.  This

10  court may only grant Petitioner's writ if the California Supreme

11  Court erred in summarily denying the original petition because

12  Petitioner's confinement violates federal law or the

13  Constitution—not because his confinement violates State law.

14      When a prisoner such as Petitioner claims he is entitled to a

15  writ because his due process rights have been violated, the

16  inquiry is two-part:  (1) Whether the prisoner has been "deprived

17  of an existing liberty of property interest," and if so, (2)

18  Whether the State's procedures were "constitutionally sufficient."

19  *Swarthout v. Cooke*, --- U.S. ----, 131 S. Ct. 859, 861 (2011).  As

20  a threshold issue, in order to entertain Petitioner's application

21  for habeas relief, there must be an established liberty interest

22  in parole.  While no "federal constitutional liberty interest in

23  parole" exists, and States are not bound to offer parole to their

24  respective prisoners, States may adopt statutes creating such a

25  liberty interest that is entitled to due process protection.  *Id.*

26  at 861; *Board of Pardons v. Allen*, 482 U.S. 369, 371 (1987).

27      It is reasonable to interpret Supreme Court jurisprudence as

28  finding that California law creates a liberty interest in parole

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 5

1  when the State's parole standards have been met.  *Swarthout v.*
2  *Cooke* at 861.   The interest at issue in Petitioner's case is
3  therefore State-created and not guaranteed by the Constitution or
4  "laws or treaties of the United States," and habeas relief may be
5  granted only if the procedures mandated by federal due process
6  were not present at Petitioner's parole suitability hearing.   *Id.*
7  at 862.

8      Where a State has created a liberty interest in parole, as
9  California has done, the only constitutionally-required process is
10  the "opportunity [for the prisoner] to be heard," and if parole is
11  denied, for the prisoner to be informed "in what respect he falls
12  short of qualifying for parole."  *Greenholtz v. Inmates of Neb.*
13  *Penal and Correctional Complex*, 442 U.S. 1, 16 (1979).   In
14  Petitioner's 2005 parole hearing, he was advised of his right to
15  appear, and elected not to do so.   Pet. Ex. 4 5:5-5:7.   At the
16  conclusion of the hearing, the Board stated its reasons for
17  denying the parole request.   Pet. Ex. 4 76:5-81:5.   Petitioner was
18  thereby afforded all of the due process procedures
19  constitutionally guaranteed to him in order to protect his liberty
20  interest, making the State's procedures "constitutionally
21  sufficient."

22      Petitioner proffers that California's requirement of "some
23  evidence" to support a conclusion of parole unsuitability is a
24  component of the liberty interest in parole, and an absence of
25  "some evidence" supporting the Board's decision equates to a
26  violation of due process.  *Id.* at 1; Pet. 9:1-11.   The bases of
27  Petitioner's claims of infringement are evidentiary—whether the
28  Board had adequate factual support to deny his request for parole.

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 6

1  Such claims are beyond the scope of this court's inquiry, because

2  the Supreme Court has never found the California "some evidence"

3  requirement to be a substantive federal requirement, and "[a]

4  finding that there is no evidence in the record supporting a

5  parole denial is irrelevant unless there is a federal right at

6  stake, as required by § 2254(a)."  *Id.* at 3.   Federal courts must

7  determine whether the procedures required by the Constitution are

8  applied, while State courts must determine whether they are

9  applied properly.  *Id.* at 3.

10     *Greenholtz*, the controlling case law where the "federal right

11  at stake" is due process protection of a State-created liberty

12  interest in parole, restricted analysis to whether

13  constitutionally-mandated procedures were present in parole

14  proceedings—i.e., whether the defendant was given the opportunity

15  to be heard and informed as to why parole was denied—but did not

16  address the issue of whether the evidence used during those

17  proceedings supported the conclusions drawn therein.  *Id.* at 3.

18  The "some evidence" requirement is a requirement under California

19  State, not federal, law; regardless of whether there was "some

20  evidence" supporting the Board's decision at Petitioner's hearing,

21  a "mere error of state law" does not precipitate a denial of due

22  process.  *Swarthout v. Cooke* at 862.   The procedures in

23  Petitioner's 2005 hearing were "constitutionally sufficient;" it

24  is irrelevant whether or not the evidence on the record supported

25  the conclusions reached in those proceedings, because this court

26  does not review for errors in the application of State law,

27  including whether or not "some evidence" supported the Board's

28  decision.  Any finding to the contrary would require federal

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 7

1 | courts to review the manner in which States apply their own
2 | procedures and laws in cases concerning liberty or property
3 | interests.  *Id.* at 863.
4 |       Although it is unnecessary to address the "some evidence"
5 | requirement, circumstances the Board may evaluate that tend to
6 | show "some evidence" include:  "the aggravated nature of the
7 | commitment offense, a previous record of violence, an unstable
8 | social history, sadistic sexual offenses, a history of severe
9 | mental problems related to the offense, and serious misconduct in
10 | jail." *Pirtle v. Cal. Board of Prison Terms*, 611 F.3d 1015, 1021
11 | (9th Cir. 2010) (citing Cal. Code Regs., tit. 15, §
12 | 2402(c)). Petitioner stabbed four unarmed women, killing one, and
13 | was subject to discipline in prison for manufacturing alcohol and
14 | other offenses. Pet. Ex. 4 16:2-18, 59:23-24, 3:12-16. There
15 | existed "some evidence" on which the Board could base its decision
16 | to deny Petitioner parole.
17 |       Petitioner additionally alleges that the Board did not
18 | evaluate his parole suitability on an individual basis, but
19 | instead operated under a policy that denied parole to virtually
20 | every prisoner serving an indeterminate life sentence, thereby
21 | violating his due process rights.  Because Petitioner offers no
22 | evidence to support this claim, it must be denied.
23 |       It has been accepted that under Governors Wilson and Davis,
24 | the State of California "disregarded regulations ensuring fair
25 | suitability hearings and instead operated under a sub rosa policy
26 | that all murderers be found unsuitable for parole." *Martin v.*
27 | *Marshall*, 431 F. Supp. 2d 1038, 1048 (N.D. Cal. 2006) (citing
28 | *Coleman*, 96-0783 LKK PAN, slip op. at 3).    When the petitioner

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 8

1   in *Coleman* offered testimony from former Board Commissioners that

2   the no-parole policy was enforced by "(1) appointing Board members

3   less likely to grant parole and more willing to disregard their

4   statutory duty; (2) removing Board members more likely to grant

5   parole; (3) reviewing decisions finding a prisoner suitable and

6   setting a new hearing before a different panel; (4) scheduling

7   rescission hearings for prisoners who had been granted a parole

8   date; (5) re-hearing favorable rescission proceedings and hand-

9   picking panels to ensure the desired outcome; (6) panel members

10  agreeing upon an outcome in advance of the hearing; and (7)

11  gubernatorial reversal of favorable parole decisions," it was

12  determined that inmates' constitutional rights were violated,

13  because they were denied the right "to be heard by an impartial

14  decision-maker."  *Id.* at 1048-49 (citing *Coleman*, 96-0783 LKK PAN,

15  slip op. at 3).  This policy was established by Governor Wilson

16  and continued by Governor Davis, who served from 1999 until 2003.

17  *Id.* at 1048.

18      Petitioner's parole hearing took place in 2005, after Davis

19  ceased to act as Governor.  Pet. 2:10-11; *Martin v. Marshall* at

20  1048.  Petitioner attempts to support his claim that he was denied

21  individualized decision-making, by offering evidence

22  representative of the Board's procedures between 1999 and 2003—not

23  2005.  Pet. Ex. 6, 7, 8, 9.  There has been no evidence proffered

24  that during Petitioner's hearing, after Governor Davis left

25  office, there existed a "sub rosa policy" of denying parole; as

26  such, Petitioner's claim should be denied.

27      Because Petitioner's liberty interest in parole is not a

28  federal one, he was afforded "constitutionally sufficient"

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 9

1   procedures by having the opportunity to be heard and receiving

2   articulated findings as to why he was denied parole, and he

3   provided no evidence to support his claim that parole was denied

4   as a result of a sub rosa policy by the Board to deny parole to

5   those serving indeterminate life sentences, his right to due

6   process under the Fifth and Fourteenth Amendments was not

7   violated.

8          B.   Cruel and Unusual Punishment

9          Petitioner claims that the Board subjected him to cruel and

10  unusual punishment, violating his Eighth and Fourteenth Amendment

11  rights, when it denied his application for parole.  Because there

12  is no federal right to parole, the petition does not pass section

13  2254(a) muster.  *Swarthout v. Cook* at 862; see 28 U.S.C. §

14  2254(a).  While California has created a liberty interest in

15  receiving parole where parole standards have been met, there is no

16  absolute right to be paroled.  See  *Swarthout v. Cooke* at 862.

17         As determined by the California Supreme Court, the cruel and

18  unusual punishment clause "does not require the Board . . . to set

19  premature release dates for current life-maximum prisoners who, it

20  believes, present public safety risks."  *In re Dannenberg*, 34 Cal.

21  4th 1061, 1098 (2005).  Petitioner was sentenced to 15-years-to-

22  life when he pled guilty to second degree murder and three counts

23  of assault with intent to commit murder.  Pet. 1:22-1:24.  As a

24  "life-maximum" prisoner, Petitioner is not entitled to a premature

25  release date if the Board determines he poses a present risk to

26  public safety.  See *Dannenberg*, 34 Cal. 4th at 1098.    Indeed,

27  the Board found Petitioner was "not suitable" for parole, as his

28  release "would pose an unreasonable risk of danger to society or a

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 10

1 threat to public safety."  Pet. Ex. 4 76:9-11.  In concluding that

2 Petitioner posed a present risk to public safety, the Board's

3 denial of Petitioner's request for parole did not constitute cruel

4 and unusual punishment, thereby not violating the Eighth or

5 Fourteenth Amendments.

6 **IV.   Conclusion**

7     Petitioner's due process right under the Fifth and Fourteenth

8 Amendments and his right to be free from cruel and unusual

9 punishment under the Eighth and Fourteenth Amendments have not

10 been infringed, because he was given "constitutionally sufficient"

11 procedures to protect his State-created liberty interest in

12 parole, there is no evidence of a sub rosa policy to deny parole

13 to prisoners serving indeterminate life sentences, and the

14 California Board of Prison Terms is not required to release life-

15 maximum prisoners before the expiration of their sentences.

16 Accordingly, Petitioner's application for writ of habeas corpus

17 should be **DENIED**.  This court will subsequently not recommend a

18 Certificate of Appealability, because Petitioner has not made the

19 requisite showing of a denial of a constitutional right.  28

20 U.S.C. § 2253(c)(2).

21 **V.   Recommendation**

22     In accordance with the foregoing, **IT IS RECOMMENDED** that the

23 court issue an order approving and adopting this report and

24 recommendation.

25 **VI.   Objections**

26     Any party may object to a magistrate judge's proposed findings,

27 recommendations or report within **fourteen (14)** days following

28 service with a copy thereof.   Such party shall file written

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 11

1   objections with the Clerk of the Court and serve objections on all

2   parties, specifically identifying the portions to which objection is

3   being made, and the basis therefor.  Any response to the objection

4   shall be filed within **fourteen (14)** days after receipt of the

5   objection.  Attention is directed to FED. R. CIV. P. 6(d), which adds

6   additional time after certain kinds of service.

7       A district judge will make a de novo determination of those

8   portions to which objection is made and may accept, reject, or

9   modify the magistrate judge's determination.  The judge need not

10  conduct a new hearing or hear arguments and may consider the

11  magistrate judge's record and make an independent determination

12  thereon.  The judge may, but is not required to, accept or consider

13  additional evidence, or may recommit the matter to the magistrate

14  judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621

15  (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72;

16  LMR 4, Local Rules for the Eastern District of Washington.

17      A magistrate judge's recommendation cannot be appealed to a

18  court of appeals; only the district judge's order or judgment can be

19  appealed.

20      The District Court Executive is directed to file this Report

21  and Recommendation and provide copies to the parties and the

22  referring district judge.

23

24      DATED this 25 day of March, 2011.

25                                  s/ James P. Hutton
                                    JAMES P. HUTTON
26                             UNITED STATES MAGISTRATE JUDGE

27

28

Report and Recommendation re:
Petition for Writ of Habeas Corpus - 12